# JAMES HAMILTON FOLEY, PLLC
3000 Weslayan Street, Suite 350
Houston, Texas 77027
(713) 256-1986 (Mobile)
www.jhfoleylaw.com

June 15, 2021

| | |
|---|---|
| HARLOE DISASTERS, LLC<br>d/b/a SERVPRO OF OCONEE/SOUTH ANDERSON COUNTIES<br>204 Playground Road<br>Walhalla, South Carolina 29691 | *Via CM/RRR: 7020 0640 0001 9409 6389* |
| HARLOE DISASTERS, LLC<br>c/o REGISTERED AGENTS, INC.<br>6650 Rivers Avenue, Suite 100<br>Charleston, South Carolina 29406 | *Via CM/RRR: 7019 2970 0000 2823 1432* |
| William A. Harloe, III<br>SERVPRO OF OCONEE/SOUTH ANDERSON COUNTIES<br>204 Playground Road<br>Walhalla, South Carolina 29691 | *Via E-mail: office@servpro11259.com* |

Re: **LETTER OF REPRESENTATION, NOTICE OF DTPA CLAIM, NOTICE OF RCLA CLAIM, AND DEMAND FOR PAYMENT** – Client: Susan C. Heim – 5222 Norborne Lane, Houston, Texas 77069.

Dear HARLOE DISASTERS, LLC and Mr. William A. Harloe, III:

Please accept this letter as formal notice that Ms. Susan C. Heim ("Ms. Heim" or the "Client") engaged JAMES HAMILTON FOLEY, PLLC to represent her interests with regard to the above-referenced matter. Please direct all further communication regarding this matter to this office.

### ***Notice of DTPA and RCLA Claims***

Please accept this letter as Ms. Heim's formal notice of construction defect claims pursuant to the TEXAS RESIDENTIAL CONSTRUCTION LIABILITY ACT ("RCLA"). Each of the construction defects claims are specifically identified in detail below. This letter constitutes Ms. Heim's formal notice and opportunity to cure in compliance with the RCLA.

Further, this letter constitutes my Client's formal notice of complaint and demand for restitution and/or damages pursuant to the TEXAS DECEPTIVE TRADE PRACTICES ACT – CONSUMER PROTECTIONS ACT V.T.C.A. – BUSINESS AND COMMERCE CODE, SECTION 17.41 ET SEQ. ("DTPA"). Please immediately notify your insurance carrier of Ms. Heim's claim.

## *The Subject Property – 5222 Norborne Lane*

Ms. Heim is the owner of a parcel of real property, including all improvement situated thereon, located at 5222 Norborne Lane, Houston, Texas 77069 (the "Subject Property"), which is more particularly described as follows:

> LOT FORTY-THREE (43), IN BLOCK ONE (1), OF WOODS OF WIMBLEDON, SECTION TWO (2), A SUBDIVISION IN HARRIS COUNTY, TEXAS, ACCORDING TO THE MAP OR PLAT THEREOF RECORDED AT VOLUME 304, PAGE 32, OF THE MAP RECORDS OF HARRIS COUNTY, TEXAS.

## *February 17, 2021*

On February 17, 2021, Ms. Heim arrived at the Subject Property and discovered that the pipes burst in the ceiling of her home (downstairs study) due to the freezing temperatures while the home was without electricity. Ms. Heim observed water pouring out of the ceiling onto the floor of her home. Every room in the downstairs of Ms. Heim's home was covered in standing water. Ms. Heim's friend, Frank Pfleger, turned off the water supply to the house.

Ms. Heim immediately contacted the office of her STATE FARM agent, Chris Burns ("Mr. Burns"), by telephone to notify Mr. Burns/STATE FARM of the water damage and file a claim on her homeowner's insurance policy. Ms. Heim spoke to a member of Mr. Burn's office staff who provided a telephone number to Ms. Heim to start the claims process through STATE FARM.

On February 17, 2021, after observing the water damage to her home, Ms. Heim contacted a plumber (Patrick Hamilton) and requested that he immediately assist her with the repair of the damaged pipes. The plumber appeared at the Subject Property that evening (February 17th). Ms. Heim's plumber repaired and insulated the damaged pipes that evening.

At some time after Ms. Heim contacted Mr. Burns office, Ms. Heim received a telephone call from Mr. Burns who was checking to see how Ms. Heim was doing. During their conversation, Mr. Burns informed Ms. Heim that he instructed his office personnel to file a claim on her homeowner's insurance policy with STATE FARM. Mr. Burns also provided telephone numbers for three (3) water-damage remediation companies, SERVPRO, SERVICE MASTER, and PAUL DAVIS REMEDIATION.

Shortly after speaking with Mr. Burns, Ms. Heim contacted all three (3) of the aforementioned water-damage remediation companies and provided her contact information. The customer service representatives for each of the aforementioned companies indicated that someone would return her call.

Throughout the duration of February 17, 2021, Ms. Heim and her friends and family members (Frank Pfleger, Jill Pfleger – friends, Sterling Neal – son-in-law, Alex Heim and Preston

Heim – sons) worked continuously at the Subject Property to protect furniture from water damage and mitigate the effects of the water-damage to her home.

### *February 18, 2021*

William Harloe ("Mr. Harloe") from HARLOE DISASTERS, LLC d/b/a SERVPRO OF OCONEE/SOUTH ANDERSON COUNTIES ("SERVPRO") contacted Ms. Heim by telephone and informed her that his SERVPRO work crew was traveling to Houston and that he could be at the Subject Property to assess the situation on Monday, February 22, 2021. Ms. Heim agreed to meet with Mr. Harloe at the Subject Property on the following Monday.

### *February 22, 2021*

On Monday, February 22, 2021, Mr. Harloe arrived at the Subject Property to assess the scope of the water-damage remediation project.

### *February 23, 2021 through March 7, 2021*

During the period of Tuesday, February 23, 2021, Mr. Harloe and/or his work crew (2 persons) worked at the Subject Property to remove water damaged drywall, insulation, flooring, and other compromised materials from the home. Mr. Harloe/SERVPRO worked on Ms. Heim's home at the Subject Property until Saturday, March 6, 2021, which is when Mr. Harloe initially declared and/or believed that SERVPRO's water-damage remediation efforts were complete.

On Saturday, March 6, 2021, Mr. Harloe was present at the Subject Property with Ms. Heim for the final walk-through inspection of SERVPRO's remediation efforts. Frank Pfleger ("Mr. Pfleger"), a friend of Ms. Heim, accompanied her during the walk-through inspection.

During the walk-through inspection, Mr. Pfleger, Mr. Harloe, and Ms. Heim were in the Study when Mr. Pfleger noticed that the wet insulation behind the drywall on the east wall of the Study had not been removed. Mr. Pfleger asked Mr. Harloe why the east wall in the Study had not been removed like the other walls. Mr. Harloe responded that his work crew informed him that the east wall area of the Study was dry. Mr. Pfleger then felt wet insulation behind the east wall. Apparently, the wet insulation behind the wall, and other compromised materials had not been removed during SERVPRO's remediation efforts. Mr. Harloe apologized to Mr. Pfleger and Ms. Heim and instructed them that his SERVPRO work crew informed him that it was dry.

After Mr. Harloe was informed that his crew failed to recognize and remediate an entire section of Mr. Heim's water-damaged home, he instructed two (2) members of his SERVPRO work crew begin water-damage mitigation/remediation efforts on the east wall of the Study. Mr. Harloe and the two (2) members of his SERVPRO work crew removed the entire section of water-damaged drywall and insulation and set up fans overnight in an attempt to dry out the Study.

On the following morning, Sunday, March 7, 2021, Mr. Harloe returned to the Subject Property and informed Ms. Heim that all of the water-damaged areas of her home were dry and

that SERVPRO's remediation efforts at the Subject Property were completed. After assuring Ms. Heim that the home was completely dry (no less than 24 hours after the drywall and insulation was removed), Mr. Harloe removed the fans from Ms. Heim's home and departed from the Subject Property.

Mr. Harloe/SERVPRO never returned to the Subject Property after March 7, 2021. Although Ms. Heim recently became aware that an entity known as the "WILSON STORM TEAM" was compensated by STATE FARM for some unknown reason, Ms. Heim does not have any recollection of any person affiliated with WILSON STORM TEAM being present at the Subject Property for any reason.

Based on information and belief, the "WILSON STORM TEAM" is a Louisiana limited liability company, WILSON STORM TEAM, LLC, that is doing business under the assumed name, "SERVPRO OF BIRMINGHAM."

### *March 1, 2021*

On or about March 1, 2021, Sally Nan ("Ms. Nan"), an adjuster from STATE FARM, contacted Ms. Heim by telephone to discuss the insurance claim related to the Subject Property. Ms. Nan and Ms. Heim agreed to schedule an inspection of Ms. Heim's home on March 15, 2021. Ms. Nan is the first of three (3) different insurance adjusters that have been assigned to Ms. Heim's claim since the date that Ms. Heim initially notified STATE FARM of her claim (February 17, 2021).

### *March 2, 2021*

Ms. Heim contacted Ms. Nan by telephone and they scheduled a telephone conference for 6:00 p.m. on the following afternoon, Wednesday, March 3, 2021.

### *March 3, 2021*

Ms. Heim attempted to contact Ms. Nan by telephone; however, Ms. Nan did not answer Ms. Heim's call. Ms. Heim left a voicemail for Ms. Nan that requested a return call.

### *March 10, 2021*

On March 10, 2021, Ms. Heim met with a contractor at the Subject Property to assess the scope of the reconstruction project that would be necessary to return Ms. Heim's home to a safe and livable state. During their meeting at the Subject Property, the contractor informed Ms. Heim that he did not believe the water-damage remediation phase was complete. Based on her discussion with the contractor, Ms. Heim became concerned that SERVPRO did not properly complete/handle/oversee that water-damage remediation phase.

### *March 15, 2021*

On March 15, 2021, Ms. Nan arrived at the Subject Property to perform the inspection that she previously scheduled with Ms. Heim during their initial conversation on or about March 1, 2021. During the inspection, Ms. Heim pointed out the areas of her home that concerned her (and the contractor).

Based on information and belief, Ms. Nan spoke directly with the contractor at some time, but the date cannot be determined at this time. The contractor indicated to Ms. Heim that he contacted Ms. Nan by telephone and Ms. Nan informed him that she would have to return his call because she was in the field. Based on information and belief, Ms. Nan never returned the contractor's call.

### *March 18, 2021*

On March 18, 2021, Ms. Heim attempted to contact Ms. Nan to clarify the costs/calculations that Ms. Nan purported needed during her inspection.

### *March 24, 2021*

On or about March 24, 2021, Ms. Heim contacted Ms. Nan by telephone to discuss the costs/calculations. During their conversation, Ms. Nan informed Ms. Heim that she had not yet spoken to the contractor but that she intended to call him.

### *March 29, 2021*

On March 29, 2021, Ms. Nan contacted Ms. Heim to share the details of STATE FARM's initial estimate and payment. Ms. Nan instructed Ms. Heim that she needed an estimate from Ms. Heim's contractor. Ms. Heim responded that it was imperative that Ms. Nan speak with the contractor directly about his concern that SERVPRO failed to properly remediate that water-damage throughout Ms. Heim's home. Ms. Heim specifically informed Ms. Nan that additional water-damage remediation work would likely be needed before the contractor could provide a written estimate of the reconstruction costs.

### *April 1, 2021*

On April 1, 2021, Ms. Heim attempted contacted Ms. Nan by telephone. Based on information and belief, another STATE FARM representative informed Ms. Heim that her claim had been reassigned to a different adjuster, Christopher Rice ("Mr. Rice"). The STATE FARM representative then connected Ms. Heim directly to Mr. Rice to discuss Ms. Heim's claim.

Ms. Heim provided an update on the contractor's concerns about the status of the incomplete water-damage remediation by SERVPRO. During their conversation, Ms. Heim asked Mr. Rice whether he intended to inspect the damage at the Subject Property and Mr. Rice responded that it was unnecessary. Ms. Heim specifically informed Mr. Rice that it would be

necessary for Mr. Rice to speak directly with the contractor about the contractor's concerns with SERVPRO's remediation efforts. Mr. Rice agreed to contact the contractor to discuss SERVPRO's remediation efforts.

### *April 2, 2021*

On April 2, 2021, Ms. Heim attempted to contact Mr. Rice by telephone; however, Mr. Rice was unavailable. Ms. Heim left a voicemail for Mr. Rice that requested that he perform an inspection of Ms. Heim's home to personally observe SERVPRO's remediation efforts and also to provide her with the opportunity to present some of the documentation that proved the damages she sustained as a result of the frozen/burst water pipes.

### *April 3, 2021*

On April 3, 2021, the contractor informed Ms. Heim that Mr. Rice contacted him to discuss the status of SERVPRO's remediation efforts. Ms. Heim then contacted Mr. Rice by telephone to discuss her claim. Mr. Rice informed Ms. Heim that he agreed that further water-damage remediation needed to be performed and Mr. Rice instructed Ms. Heim to contact Mr. Harloe in South Carolina to continue the water-remediation process with a local SERVPRO affiliate.

### *April 5, 2021*

On April 5, 2021, Ms. Heim contacted Mr. Harloe by telephone and informed Mr. Harloe that SERVPRO needed to address its defective/incomplete water-damage remediation at the Subject Property. Mr. Harloe informed Ms. Heim that he would contact his office at SERVPRO and an "organizer" would contact Ms. Heim to make arrangements to assess the need for further remediation efforts to be provided by local company.

### *April 7, 2021*

On April 7, 2021, Mrs. Harloe contacted Ms. Heim by telephone and informed her that the "storm teams" were moving out of Texas and that she would connect Ms. Heim with a company local to the Houston area. In fact, Mrs. Harloe asked Ms. Heim where the Subject Property in Houston was located so that she could direct her to the appropriate person.

### *April 9, 2021*

On April 9, 2021, Ms. Heim contacted Mr. Rice by e-mail and informed him that she spoke to Mr. and Mrs. Harloe/SERVPRO about further water-damage remediation. She also instructed Mr. Rice that she did not receive any further communication from Mr. and Mrs. Harloe/SERVPRO after speaking to Mrs. Harloe on April 7, 2021. Ms. Heim provided the contact information that she had for Mr. and Mrs. Harloe/SERVPRO so that Mr. Rice could contact them directly.

### *April 14 - 16, 2021*

On April 14, 2021, Ms. Heim sent an e-mail to Mr. Rice that requested a status update regarding Servpro; however, Mr. Rice did not respond to Ms. Heim's e-mail inquiry. On or about April 16, 2021, Ms. Heim also attempted to contact Mr. Rice by telephone; however, Mr. Rice was unavailable. Ms. Heim left a voicemail for Mr. Rice that requested a return call to discuss the status of Servpro's remediation efforts.

### *April 20, 2021*

On April 20, 2021, Ms. Heim attempted to contact Mrs. Harloe by telephone; however, Mrs. Harloe was unavailable. Ms. Heim left a voicemail for Ms. Harloe that requested a status update on Servpro's need to perform additional water-damage remediation at the Subject Property.

Next, Ms. Heim contacted Mr. Rice by telephone to inquire about the status of Servpro's need to perform additional water-damage remediation. Mr. Rice indicated that he received a communication from the "Wilson Storm Team" that the remediation was "determined to be complete" and State Farm required an estimate from Ms. Heim's contractor.

As previously referenced above, Ms. Heim does not have any recollection of speaking to any person affiliated with the "Wilson Storm Team" nor does she recall any person from the "Wilson Storm Team" ever being present at the Subject Property for any reason.

### *Construction Defects and Breach of Warranty Claims*

This letter identifies the construction defects, breach of warranty of good and workmanlike construction, breach of contract, negligence, gross negligence, and demands compensation for the damages sustained by my Client.

Servpro's water-damage mitigation/remediation was defective and resulted in substantial and ongoing damage to Ms. Heim's home. The defects resulting from Servpro's failure to perform its services in a good and workmanlike manner are specifically identified in the following documents, which are incorporated herein by reference as if set forth fully herein:

(1) Limited Indoor Mold Assessment Report – AQ Testing;
(2) Mold Remediation Protocol – AQ Testing; and
(3) Mold Remediation Protocol Estimate – Total Restoration.

The proliferation of mold in Ms. Heim's home resulting from Servpro's defective efforts to perform water-damage mitigation/remediation now require the mold infestation to be remediated by a licensed mold remediation company. Servpro is not licensed to perform mold-remediation services in the State of Texas; therefore, Servpro is legally prohibited from attempting to cure the construction defects existing at the Subject Property.

### *RCLA Demand for Cure*

Please accept this letter as Ms. Heim's formal notice of construction defect claims pursuant to the TEXAS RESIDENTIAL CONSTRUCTION LIABILITY ACT. The upstairs and downstairs areas of Ms. Heim's home are now defective for the reasons identified in the attached inspection reports.

Please accept this letter as Ms. Heim's demand for cure pursuant to the RCLA. If the construction defects identified in this letter have not been corrected as within thirty-five (35) days, **July 19. 2021**, as required by law, Ms. Heim intends to begin taking whatever action is necessary to remediate the damages caused by SERVPRO. This will be SERVPRO's final opportunity to inspect the Subject Property prior to commencing the mold remediation process.

### *Notice of Violations of Deceptive Trade Practices Act*

According to the DTPA, Ms. Heim is entitled to recover her economic damages, and treble damages (three times the amount of economic damages) if she is able to prove that the conduct was committed knowingly and intentionally. The lack of permitting and licensed contractors should conclusively prove the "knowingly and intentionally" component of the DTPA that could subject SERVPRO to liability for treble damages.

SERVPRO violated the DTPA because it:

1. breached an express and/or implied warranty;

2. price gouging during a declared disaster;[1]

3. made a false, misleading, or deceptive act or practice that is specifically enumerated in the "laundry list" found in TEXAS BUSINESS AND COMMERCE CODE § 17.46(b) and that my Client relied on to his detriment by:

   A. passing off goods or services as those of another;[2]

   B. causing confusion or misunderstanding about the source, sponsorship, approval, or certification of goods or services;[3]

   C. causing confusing or misunderstanding as to affiliation, connection, or association with, or certification by, another;[4]

   D. representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not

---

[1] *See* TEX. BUS. & COM. CODE § 17.4625;
[2] *See* TEX. BUS. & COM. CODE § 17.46(b)(1);
[3] *See* TEX. BUS. & COM. CODE § 17.46(b)(2);
[4] *See* TEX. BUS. & COM. CODE § 17.46(b)(3);

     have or that a person has a sponsorship, approval, status, affiliation, or connection which the person does not;[5]

  E. representing that an agreement confers or involves, rights, remedies, or obligations that it does not, or that are prohibited by law;[6]

  F. representing that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are not;[7]

  G. failing to disclose information concerning goods or services which was known at the time of the transaction if such failure to disclose such information was intended to induce the consumer into a transaction into which the consumer would not have entered had the information been disclosed[8];

  H. representing that a guaranty or warranty confers or involves rights or remedies that it does not;[9]

  I. falsely representing that work or services were performed on the Subject Property when the work had not been performed;[10]

3. committed an unconscionable action or course of action[11];. and

Ms. Heim is in the process of preparing a comprehensive damage model. Ms. Heim's demand for payment of her economic damages is expected to increase as the inspections and mold remediation protocols and reconstruction protocols are developed.

Ms. Heim demands payment of her **economic damages** in the amount of **$250,000.00**. Additionally, Mr. Heim has already incurred **reasonable and necessary attorney's fees** that will likely exceed **$10,000.00**. If a lawsuit is filed, Ms. Heim will also seek exemplary damages based on their causes of action for fraudulent inducement and gross negligence.

If this matter is not resolved within sixty (60) days, **Friday, August 13, 2021**, Ms. Heim will file a lawsuit against Servpro asserting every cause of action and requests for relief available under Texas law. If a lawsuit is filed, Ms. Heim will request the maximum amount of damages allowed by Texas law, plus attorney's fees and court costs.

---

[5] *See* Tex. Bus. & Com. Code § 17.46(b)(5);
[6] *See* Tex. Bus. & Com. Code § 17.46(b)(12);
[7] *See* Tex. Bus. & Com. Code § 17.46(b)(7);
[8] *See* Tex. Bus. & Com. Code § 17.46(b)(24);
[9] *See* Tex. Bus. & Com. Code § 17.46(b)(20);
[10] *See* Tex. Bus. & Com. Code § 17.46(b)(22);
[11] *See* Tex. Bus. & Com. Code § 17.49(i);

### *Preservation Notice to Prevent Spoliation of Evidence*

Please be advised that you should not destroy any copies of any materials or correspondence related to this matter, as such would constitute spoliation of evidence. Any materials on hard drives of computers, such as e-mails and accounting information, should also be preserved as this evidence will be relevant if we cannot resolve these issues.

The demands made herein are not made to the exclusion of any other rights or remedies to which my Clients are entitled, and nothing in this letter, nor any act or omission by my Clients, shall be construed as a waiver of any right or remedy possessed by my Clients, all of which are expressly reserved.

### *Conclusion*

SERVPRO will be provided a 35-day opportunity to cure; however, SERVPRO is not authorized to cure the defects (mold) caused by its own negligence. Please contact your insurance carrier and immediately notify your insurance carrier that any inspection of the Subject Property must occur within the next thirty-five (35) days because Ms. Heim is required to take reasonable efforts to mitigate her damages.

If the defects caused by SERVPRO are not cured by a licensed third-party mold remediation company within thirty-five (35) days, Ms. Heim demands payment of the following itemized costs associated with her claim against SERVPRO:

(1) $    595.00 – preparation of mold protocol by AQ TESTING;
(2) $    475.00 – laboratory fees – AQ TESTING;
(3) $ 2,505.00 – service call fee and laboratory fees – AQ TESTING;
(4) $30,825.30 – mitigation by TOTAL RESTORATION;
(5) $55,792.22 – mold remediation by TOTAL RESTORATION;
(6) $ 3,831.69 – HVAC mitigation by TOTAL RESTORATION;
(7) $ 1,150.99 – storage fees;
(8) $_TBD___ – substitute housing; and
(9) $10,000.00 – attorney's fees.

In addition to the damages that Ms. Heim seeks to recover for the construction defects caused by SERVPRO, Ms. Heim also demands that SERVPRO compensate her for damage to her personal property caused by SERVPRO's negligence as detailed below:

(1) $414.34 – repair mirror on antique buffer and delivery to home;
(2) $ 75.00 – faucet handle repair behind washing machine;
(3) $209.14 – repair broken glass detector (security system); and
(4) $_TBC  - repair and/or replace damaged metal brackets for door blinds in the Den.

   As Ms. Heim continues to incur additional expenses associated with the efforts required to correct the defects caused by SERVPRO's negligence, Ms. Heim expressly reserves the right to supplement her demand to include additional expenses/costs/damages that she is reasonably expected to incur.

   Your prompt attention to this matter is required. Should you have any questions or comments regarding the contents of this letter, please do not hesitate to contact my office.

               Sincerely,

               **JAMES HAMILTON FOLEY, PLLC**

               James Hamilton Foley
               jhf@jhfoleylaw.com

cc:  Susan Heim   *Via E-mail: schphd@yahoo.com*
    Carly Harloe   *Via e-mail: charloe@servpro11259.com*
    Will Harloe    *Via e-mail: wharloe@servpro11259.com*

Enclosed:  (1)  Limited Indoor Mold Assessment Report – AQ TESTING;
       (2)  Mold Remediation Protocol – AQ TESTING; and
       (3)  Mold Remediation Protocol Estimate – TOTAL RESTORATION.